## MISSOURI, K. & T. RY. CO. v. UNITED STATES et al.
### Civ. A. No. 4053.

United States District Court
N. D. Texas, Dallas Division.
Aug. 14, 1950.

O. O. Touchstone, Dallas, Tex., for plaintiff.

O. Morris Harrell, Assistant United States Attorney, Dallas, Tex., for defendants.

ATWELL, Chief Judge.

The petitioner brings its complaint against the United States and Sam D. W. Low, United States Collector of Customs, Galveston, Texas, George L. C. Pratt, Assistant Collector of United States Customs, Galveston, Texas, and N. M. Williams, Assistant Collector of United States Customs, Dallas, Texas.

It alleges that in October, 1948, the Aviation Activities, Inc., by waybills 74341 and 74343, shipped in bond by New York Central lines, and this plaintiff, which is a connecting carrier, 58 aviation engines, marked, in raised letters, "Packard Motor Car Company." That said engines are Merlin Inline liquid cooled aviation engines. That they were consigned to L. H. Luckey Company, Dallas, Texas, and arrived on November 6th and November 10th, 1948; there being two cars, Erie 10327 and Canadian Pacific 353437. That both the shipper and the consignee were promptly notified by the plaintiff of the arrival of said shipments. On December 15th, 1948, both the shipper and the consignee inspected said shipments and found them on hand in plaintiff's Dallas yard ready for delivery.

The shipper and consignee objected to the manner of billing and requested that said billing be changed to show that said engines were shipped as scrap and not as engines. Each was advised both by the New York Central and by the plaintiff that under the rules and regulations of the Interstate Commerce Commission, they were not permitted to change the waybills as

requested. Plaintiff presented to both shipper and consignee, both freight bills covering transportation charges. Payment was declined and the same is still due and owing to the plaintiff, and such engines are abandoned by shipper and consignee.

Pursuant to authority secured from the Interstate Commerce Commission, and from the Collector of Customs, one of the defendants herein, plaintiff unloaded such engines from the cars on December 29th, 1948, and stored same on plaintiff's premises where they have continued to remain since said date.

That the plaintiff has a carrier's lien on the engines for its charges which aggregate, including federal tax and storage, the sum of $7,704.80. That said shipper and consignee still fail and refuse to pay the plaintiff said amount.

That the defendants, Customs Collectors, claim a superior charge and lien against said 58 engines, and that the plaintiff's lien is subordinate and inferior to such lien. That the defendants have advertised for sale, said engines. The sale to be by public auction in the plaintiff's yard at McKinney and Houston Streets, Dallas, on August 10th at ten o'clock in the morning. That such sale would do plaintiff an irreparable injury.

Plaintiff claims that the engines were manufactured by the Packard Motor Car Company in Detroit, Michigan, and not manufactured in Canada, nor anywhere outside of the United States. That after such manufacture in the United States, they were shipped into Canada for use, and after use they became, and are, second-hand engines, returned to the United States, and that as such second-hand used aviation engines, they are not subject to any United States tariff, or, customs, and that the United States has no lien upon the same, nor, is there any customs duty due on the same. That defendants' claim is void both in fact and in law.

That the same were shipped by the plaintiff and its connecting carrier in conformity with Sec. 4(a) of the uniform straight bill of lading which allows the carrier a lien for both freight and storage.

Restraint is sought to prevent, both temporarily and permanently, such sale by the defendants, or any of them, and that it be decreed that the plaintiff has a first and superior and valid subsisting lien for the amount mentioned.

In the alternative, the court's attention is called to Sec. 1491, Title 19 U.S.C.A., which appears to give the Treasury the authority to make a sale, after appraisal by the appraiser of merchandise. The latter part of which Section calls attention to a case where the proceeds of such sale may be insufficient to pay duties, storage and other charges, if the merchandise be of such character as will depreciate. Sec. 1493 apportions the proceeds of sale to the satisfaction of any lien for freight charges, or contribution in general average, to which a claim shall be filed within a certain time.

At the request of the defendants they were given until today to file answer to the show cause rule. They say that the court is without jurisdiction, because proper service has not been had upon the United States. They also claim that no duty has been assessed, nor has there been any sufficient proof to them, that the engines were manufactured in the United States and then shipped to Canada, where they were used. They concede that if that is true, then, and in that event, no duty would be due for their re-entry into the United States, if such entry was properly sought.

From the testimony submitted today, I find that the allegations made by the plaintiff are true, as to the engines having been manufactured in the United States, thereafter forwarded to Canada where they were used, and within the terms of the statute, and then returned to the United States and moved in bond to Dallas, Texas, where the consignee refused to accept because of the billing to which I have already referred.

The testimony further shows that the engines are worth something in excess of $4,400.00, and that the plaintiff's claim for freight and storage is in excess of $7,700.-00. For the freight and storage the plaintiff has a statutory lien. That the defendants made no estimate of what the duty would be had such a duty been valid.

A sale such as was advertised and such as is now enjoined, temporarily, would work irreparable damage to the plaintiff.

Authorities. Sec. 1491, 19 U.S.C.A. as amended June 25, 1938, C. 679, Sec. 14, 52 Stat. 1083. Also Sec. 4(a) bill of lading, as to contract with reference to free time, notices, storage charges and lien for freight, and other lawful charges. Charges for these items may not be remitted by the carrier, since the carrier is bounden to collect the same impartially from all shippers, otherwise there would be a penalty for rebating.

Temporary restraint is granted and bond fixed in the sum of $1,000.00.